[No. C060346. Third Dist. Aug. 16, 2010.]

WALNUT PRODUCERS OF CALIFORNIA et al., Plaintiffs and Appellants,
v.
DIAMOND FOODS, INC., Defendant and Respondent.

638

COUNSEL

Bartko Zankel Tarrant & Miller, Charles G. Miller, Howard I. Miller; Tuttle & Van Konynenburg, Therese Tuttle, Frank Van Konynenburg; Lovitt & Hannan, J. Thomas Hannan, Ronald Lovitt, Henry Bornstein; MacDonald & Associates and Iain A. MacDonald for Plaintiffs and Appellants.

Winston & Strawn, Jeffrey J. Lederman, Jeffrey S. Bosley and Leda M. Mouallem for Defendant and Respondent.

## OPINION

**NICHOLSON, Acting P. J.**—Plaintiffs, producers of walnuts, appeal the trial court's order striking all class action allegations from their complaint. Plaintiffs claim that a class action waiver in their arbitration agreements with defendant, a walnut processor, was unconscionable. The trial court disagreed with their argument, as do we. We affirm the trial court's order.

## ALLEGATIONS

For purposes of this appeal, we assume all factual allegations in the complaint are true.

Plaintiff Walnut Producers of California (Producers) is a nonprofit cooperative marketing association. Its members are persons and entities who grow walnuts. Its members have assigned to it all of their claims against defendant.

Plaintiff George J. Miller Ranch, Inc. (Miller Ranch), is a corporation engaged in the production of walnuts.

Defendant Diamond Foods, Inc. (Diamond Foods), is the successor by way of merger to an agricultural cooperative known as the Diamond Walnut Growers, Inc. (the Co-op). Diamond Foods had been a wholly owned subsidiary of the Co-op.

Prior to 2005, the Co-op's members would deliver their walnut crops to the Co-op, and they would be paid on a cooperative crop pool basis based on the net proceeds generated by the sale of the walnuts.

In 2005, Diamond Foods proposed the merger with the Co-op. As part of that process, it gave to the Co-op members a proposed walnut purchase agreement (the Agreement) that it would use with the members. The Agreement would replace the marketing agreements that existed between the Co-op and its members once the Co-op ceased to exist.

On July 1, 2005, the Co-op's members approved the merger with Diamond Foods. With the cancellation of the marketing agreements, the Co-op's members needed to find an entity to purchase their walnuts. They could either deliver their crops to Diamond Foods as arm's-length suppliers pursuant to the terms of the Agreement or, because smaller processors did not have sufficient capacity to process the members' crops, they could let their crops fall to the ground and go to waste.

The Agreement was presented to the growers on a "take-it-or-leave-it" basis without an explanation of its terms and without an opportunity to negotiate its terms. With no real options available to them, most of the growers had no choice but to sign the Agreement. Approximately 95 percent of the Co-op's members, including Miller Ranch, signed the Agreement.[1]

Under the Agreement, the growers agreed to sell, and Diamond Foods agreed to buy, their entire crop of walnuts each year during the Agreement's term. The Agreement's terms were for three, five, or 10 years. The Agreement did not set forth a purchase price. Rather, it provided that Diamond Foods would establish the price in good faith each year following the harvest, taking into account market conditions, quality, variety, and other relevant factors.

This appeal concerns the Agreement's dispute resolution requirements and, in particular, its prohibition of class actions. The Agreement in general requires all disputes to be resolved by binding arbitration. It specifically

---

[1] A grower's entering into the Agreement was not dependent on whether that grower voted to approve the merger. A Co-op member who voted against the merger could enter into the Agreement, and a member who voted in favor of the merger could decline to enter into the Agreement.

prohibits any type of class action as follows: "Each dispute will be resolved based upon its own facts and merits, and no procedure in the nature of class actions will be permitted."

Plaintiffs filed this action in 2008, alleging Diamond Foods breached the Agreement by failing to pay them the reasonable market value for their walnuts, the price plaintiffs alleged the Agreement required. Plaintiffs sought damages, reformation and declaratory relief. Despite the Agreement's class action waiver, plaintiffs brought this action as a class action on behalf of all California walnut growers who executed the Agreement with Diamond Foods, a class of growers in excess of 1,600 persons and entities.

Of relevance here, plaintiffs' sixth cause of action sought declaratory relief that the Agreement's dispute resolution clauses, including the class action waiver, were unenforceable and unconscionable. Plaintiffs contended the class action waiver was unconscionable because the Agreement was a contract of adhesion, and the prohibition effectively insulated Diamond Foods from any liability towards the growers for its wrongful conduct.

Diamond Foods filed a motion to strike all class allegations contained in the complaint. It argued the Agreement's class action waiver was enforceable and that plaintiffs could not demonstrate as a matter of law that the waiver was unconscionable. Diamond Foods also filed a demurrer.

The trial court granted the motion to strike the class allegations, and it sustained the demurrer with leave to amend. The court did not state its reasoning.

Plaintiffs appeal from the trial court's order granting the motion to strike the class allegations. They claim the doctrine of unconscionability applies to commercial contracts, they successfully pleaded facts showing the Agreement is an adhesion contract, and the Agreement's arbitration provisions, including the class action waiver, are unconscionable.[2,3]

---

[2] Since the trial court's sustaining of the demurrer, plaintiffs have filed a first amended complaint that includes the class allegations. Plaintiffs claim all proceedings on that complaint are stayed pending resolution of this appeal.

[3] Plaintiffs use much of their opening brief to argue the unconscionability of the Agreement's arbitration provisions regarding cost sharing, discovery, attorney fees, litigation exceptions, confidentiality, and collateral estoppel. None of these provisions were challenged in the motion to strike, and thus they are not before us on this appeal. It also is not necessary for us to review them in order to determine whether plaintiffs pleaded sufficient facts showing the class action waiver is unconscionable.

## DISCUSSION

### I

*Standard of Review*

Initially, we must determine which standard of review applies to this appeal. Plaintiffs argue we are to review the trial court's decision de novo. Diamond Foods asserts we are to review the court's decision only for an abuse of discretion. We agree with plaintiffs.

Generally, an order granting a motion to strike is not an appealable order. (*Yandell v. City of Los Angeles* (1931) 214 Cal. 234, 235 [4 P.2d 947]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 155, p. 231.) And when the order is reviewed on appeal following entry of final judgment, the appellate court usually applies the abuse of discretion standard. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1282 [45 Cal.Rptr.3d 222].)

This case, however, is not the usual case. The trial court's order is appealable in this instance because it effectively was a final judgment. The order struck all class allegations from the complaint, essentially dismissing the action as to all members of the purported class other than the named plaintiffs. Such an order is appealable, even if made at the pleading stage. "Whatever its form, an order that has the effect of denying certification as a class action disposes of that action and is an appealable final judgment." (*Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320, 1322, fn. 2 [13 Cal.Rptr.3d 725].)

Moreover, our review of this particular order is de novo. Although an appeal from a denial of class certification is subject to an abuse of discretion standard (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326–327 [17 Cal.Rptr.3d 906, 96 P.3d 194]), Diamond Foods's motion did not attack plaintiffs' factual allegations regarding the merits of certifying the class. Instead, it argued the class allegations should be stricken because plaintiffs did not successfully allege, and could not as a matter of law allege, facts showing that the class action waiver in the Agreement was unconscionable. The motion was akin to a general demurrer, the sustaining of which without leave to amend we would review as a question of law after assuming all factual allegations to be true. (*Brunius v. Parrish* (2005) 132 Cal.App.4th 838, 849 [34 Cal.Rptr.3d 55].)

Civil Code section 1670.5 requires a trial court to make a preliminary determination of whether a contract may be unconscionable. If it finds the contract may be unconscionable, it must afford the parties an evidentiary

hearing before it determines as a matter of law whether the contract is unconscionable. The statute reads: "When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." (Civ. Code, § 1670.5, subd. (b).)

In this instance, Diamond Foods's motion to strike the class allegations triggered the court's obligation to make a preliminary determination under Civil Code section 1670.5 whether the class action prohibition appeared to be unconscionable. This determination is similar to determining whether plaintiffs have pleaded sufficient facts to state a cause of action. Because the issue was raised as a motion to strike, the court was required to assume the truthfulness of the complaint's factual allegations and could rule on the issue only as a matter of law.

Thus, our review on this appeal is the same. At the pleading stage of this case, where Diamond Foods has sought to strike the class allegations, and plaintiffs assert the contractual prohibitions of those class allegations are unconscionable, our review under Civil Code section 1670.5, subdivision (b), is to determine de novo whether plaintiffs have pleaded sufficient facts demonstrating the class action waiver *may* be unconscionable. (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1316–1324 [27 Cal.Rptr.3d 797] (*Morris*).) If plaintiffs have met this burden, they are entitled to a full evidentiary hearing at which the trial court can definitively determine whether the class action waiver is unconscionable.

Even the case cited by Diamond Foods, *Freeman v. Wal-Mart Stores, Inc.* (2003) 111 Cal.App.4th 660 [3 Cal.Rptr.3d 860] (*Freeman*), stated that " '[u]nconscionability is ultimately a question of law for the court. [Citations.]' " (*Id.* at p. 668, fn. omitted.) Although the *Freeman* court concluded the trial court in that matter did not abuse its discretion in sustaining a demurrer to a claim of unconscionability, it reached that conclusion by examining the pleadings and the contract as a matter of law to " 'determine the legal sufficiency of the alleged facts to state a cause of action.' " (*Ibid.*, fn. omitted.) It in effect reviewed the sufficiency of the pleadings de novo.

We thus turn to the questions of law before us.

## II

### *Unconscionability of Commercial Contracts*

The parties dispute the extent to which the doctrine of unconscionability applies to commercial contracts. Plaintiffs claim California courts apply the

same rules of unconscionability to commercial contracts as they do to consumer contracts. Diamond Foods asserts courts give greater deference to agreements between merchants when evaluating unconscionability. Both parties are correct, but the deference accorded to business contracts arises from the facts surrounding their making, not solely their characterization of being a business or commercial contracts.

■ In California, the doctrine of unconscionability "applies to all contracts rather than being limited to those sales transactions governed by the Commercial Code." (*A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 485 [186 Cal.Rptr. 114] (*A & M Produce*).) The Legislature codified the doctrine of unconscionability at Civil Code section 1670.5, rather than as part of the California Uniform Commercial Code, thereby making the doctrine applicable to all types of contracts. (135 Cal.App.3d at p. 487, fn. 12.)

"[U]nconscionability is a doctrine fundamental to the operation of contract law, irrespective of the particular application." (*A & M Produce, supra*, 135 Cal.App.3d at p. 487, fn. 12.) "[T]he concept of unconscionability applies to businesses as well as consumers." (*Morris, supra*, 128 Cal.App.4th at p. 1322.)

Indeed, one of the cases relied upon for the development of the unconscionability doctrine in the national Uniform Commercial Code, on which Civil Code section 1670.5 is based, involved an agricultural output contract similar to the Agreement at issue here. (Legis. Com. com., West's Ann. Civ. Code (1985 ed.) foll. § 1670.5, p. 493.) That case, *Campbell Soup Co. v. Wentz* (3d Cir. 1948) 172 F.2d 80 (*Campbell Soup*), concerned a contract under which a company agreed to purchase all of the carrots two farmers were to harvest in a year. A section of the contract excused the company from accepting carrots under certain circumstances, but it prohibited the farmers from selling the rejected carrots elsewhere unless the company agreed. Another section limited the amount the farmers could recover in liquidated damages. (*Id.* at pp. 81, 83.)

The farmers refused to deliver the carrots when the market price exceeded the contract price by 300 percent. The court of appeals affirmed the denial of specific performance sought by the company, holding that the contract, and in particular its clauses restricting sale of rejected carrots and limiting liquidated damages, were "too one-sided an agreement to entitle the plaintiff to relief in a court of conscience." (*Campbell Soup, supra*, 172 F.2d at p. 83.) "That equity does not enforce unconscionable bargains is too well established to require elaborate citation." (*Ibid.*, fn. omitted.) The *Campbell Soup* court did not apply a different standard of unconscionability based on the commercial nature of the contract.

■ Diamond Foods, however, argues courts apply a different standard for determining unconscionability to consumer and employment contracts than they do commercial contracts, and it intimates a class action waiver can never be found unconscionable in a commercial contract as a matter of law. This is incorrect. The same standard for determining unconscionability applies to all types of contracts, and no published California appellate court opinion has determined that class action waivers in commercial contracts are not unconscionable as a matter of law. Merely calling the Agreement a commercial or business agreement does not save it from a finding of unconscionability. "[T]here appears to be no basis [in California law] for concluding that class action waivers in the commercial context cannot be found to be unconscionable and unenforceable." (*In re Yahoo! Litigation* (C.D.Cal. 2008) 251 F.R.D. 459, 468.)[4]

■ Rather than being based on categories of contracts, unconscionability is determined based on the unique factual situations of each case. "[W]hile unconscionability is ultimately a question of law, numerous factual inquiries bear upon that question. [Citations.] The business conditions under which the contract was formed directly affect the parties' relative bargaining power, reasonable expectations, and the commercial reasonableness of the risk allocation as provided in the written agreement." (*A & M Produce, supra*, 135 Cal.App.3d at p. 489.)

We thus turn to determine whether plaintiffs have pleaded sufficient facts demonstrating the class action waiver in the Agreement may be unconscionable.

---

[4] "Generally, '. . . courts have not been solicitous of businessmen in the name of unconscionability.' [Citations.] This is probably because courts view businessmen as possessed of a greater degree of commercial understanding and substantially more economic muscle than the ordinary consumer. Hence, a businessman usually has a more difficult time establishing procedural unconscionability in the sense of either 'unfair surprise' or 'unequal bargaining power.'

"Nevertheless, generalizations are always subject to exceptions and categorization is rarely an adequate substitute for analysis. With increasing frequency, courts have begun to recognize that experienced but legally unsophisticated businessmen may be unfairly surprised by unconscionable contract terms [citations], and that even large business entities may have *relatively* little bargaining power, depending on the identity of the other contracting party and the commercial circumstances surrounding the agreement. [Citations.] This recognition rests on the conviction that the social benefits associated with freedom of contract are severely skewed where it appears that had the party actually been aware of the term to which he 'agreed' or had he any real choice in the matter, he would never have assented to inclusion of the term. [Citation.]" (*A & M Produce, supra*, 135 Cal.App.3d at pp. 489–490, original italics.)

# III

## Determination of Unconscionability

Plaintiffs claim the Agreement's class action waiver is unconscionable when viewed under the traditional test of procedural and substantive unconscionability. As to substantive unconscionability, they also claim the waiver is unenforceable because it prevents vindication of unwaivable statutory rights. (See *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 455–467 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*).) The latter argument, however, has become a separate issue from unconscionability (*id.* at p. 467), so we will address it separately.

■ " 'To briefly recapitulate the principles of unconscionability, the doctrine has " 'both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results." [Citation.] The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, " 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " . . . [¶] Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.' [Citation.]" (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 160 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*).)

"Under this approach, both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable. Both, however, need not be present to the same degree. A sliding scale is applied so that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' (*Armendariz* [*v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83,] 114 [99 Cal.Rptr.2d 745, 6 P.3d 669].)" (*Morris, supra,* 128 Cal.App.4th at p. 1317.)

■ Applying this test to plaintiffs' allegations, we conclude plaintiffs have failed to plead sufficiently that the class action waiver is unconscionable.

## A. *Procedural unconscionability*

■ "The procedural element of the unconscionability analysis concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. [Citation.] The element focuses on oppression or surprise. [Citation.] 'Oppression arises from an inequality of bargaining power that

results in no real negotiation and an absence of meaningful choice.' [Citation.] Surprise is defined as ' "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." ' [Citation.]" (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 581 [61 Cal.Rptr.3d 344], fn. omitted (*Gatton*).)

Plaintiffs claim the Agreement is procedurally unconscionable because it is an adhesion contract. An adhesion contract is "a standardized contract . . . imposed upon the subscribing party without an opportunity to negotiate the terms." (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 201 [127 Cal.Rptr.2d 847].) "The term signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. [Citation.]" (*Neal v. State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].)

■ The California Supreme Court has consistently stated that " '[t]he procedural element of an unconscionable contract generally takes the form of a contract of adhesion . . . .' " (*Discover Bank, supra,* 36 Cal.4th at p. 160; see also *Armendariz v. Foundation Health Psychare Services, Inc., supra,* 24 Cal.4th at p. 113 (*Armendariz*) ["Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion."]; *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979].)

"Whether the challenged provision is within a contract of adhesion pertains to the oppression aspect of procedural unconscionability. A contract of adhesion is ' " ' "imposed and drafted by the party of superior bargaining strength" ' " ' and ' " ' "relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' " ' (*Discover Bank, supra,* 36 Cal.4th at p. 160.)" (*Gatton, supra,* 152 Cal.App.4th at p. 582.) "[A]*bsent unusual circumstances,* use of a contract of adhesion establishes a minimal degree of procedural unconscionability notwithstanding the availability of market alternatives." (*Id.* at p. 585, fn. omitted, italics added.)

Plaintiffs have not successfully pleaded the Agreement is a contract of adhesion under the unusual circumstances of this case. It is true that plaintiffs pleaded the Agreement is a standardized contract drafted by Diamond Foods that was presented to plaintiffs without any opportunity to negotiate its terms. However, it is not true according to plaintiffs' allegations that Diamond Foods had superior bargaining strength or that plaintiffs had no real alternatives available to them at the time they entered into the Agreement.

The obvious alternative for plaintiffs was not to approve the Co-op's merger into Diamond Foods. Plaintiffs' choice was not limited to entering

into the Agreement. Rather, their choice was between continuing in the Co-op, or merging the Co-op with Diamond Foods and entering into the Agreement. Since plaintiffs controlled the Co-op as members, we cannot say the Agreement was imposed on the members by a party of superior bargaining strength or that they had no other alternative but to merge the Co-op and enter into the agreement.

Moreover, plaintiffs cannot demonstrate the Agreement's class action waiver was a surprise. The class action waiver was set forth in the same size text as the rest of the Agreement and under a heading, "Dispute Resolution." Plaintiffs also had an opportunity to read the provision before executing the Agreement, as the Agreement was presented to them before they voted in favor of merging the Co-op into Diamond Foods.

■ Nevertheless, because we are reviewing only the sufficiency of the pleading, and because we apply a sliding scale to the determinations of procedural and substantive unconscionability, we continue with our analysis to determine whether plaintiffs met their burden to plead a greater showing of substantive unconscionability. We conclude they did not. "The adhesive nature of the contract alone justifies scrutiny of the substantive fairness of the contractual terms." (*Gatton, supra*, 152 Cal.App.4th at p. 586, fn. 9.)

B. *Substantive unconscionability*

■ "The substantive element of the unconscionability analysis focuses on overly harsh or one-sided results." (*Gatton, supra*, 152 Cal.App.4th at p. 586.) "No precise definition of substantive unconscionability can be proffered. Cases have talked in terms of 'overly harsh' or 'one-sided' results. [Citations.] One commentator has pointed out, however, that '. . . unconscionability turns not only on a "one-sided" result, but also on an absence of "justification" for it . . .' [citation], which is only to say that substantive unconscionability must be evaluated as of the time the contract was made. [Citation.] The most detailed and specific commentaries observe that a contract is largely an allocation of risks between the parties, and therefore that a contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner." (*A & M Produce, supra*, 135 Cal.App.3d at p. 487.)

■ "A provision is substantively unconscionable if it 'involves contract terms that are so one-sided as to "shock the conscience," or that impose harsh or oppressive terms.' [Citation.] The phrases 'harsh,' 'oppressive,' and 'shock the conscience' are not synonymous with 'unreasonable.' Basing an unconscionability determination on the reasonableness of a contract provision would inject an inappropriate level of judicial subjectivity into the analysis.

'With a concept as nebulous as "unconscionability" it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience.' [Citations.]" (*Morris, supra,* 128 Cal.App.4th at pp. 1322–1323.)

Plaintiffs claim in the complaint that the class action waiver is "indisputably one-sided" because it insulates Diamond Foods from any liability to its walnut suppliers for its wrongful conduct. Plaintiffs allege: "Because of the size of the individual claims being made and the uneven financial resources of the parties, the only effective way that grower suppliers can prosecute and maintain litigation against Diamond Foods is through a procedure in the nature of a class action."

Plaintiffs also claim the waiver is one sided in how it operates. Even though the class action waiver applies to plaintiffs and to Diamond Foods, plaintiffs assert it is one-sided because it is much more likely that the growers would initiate a class action against Diamond Foods than would Diamond Foods against the growers.

In their brief, plaintiffs also argue there is no business justification for refusing to allow class arbitration of the growers' claims. They assert the lack of a business justification weighs in favor of a finding of unconscionability.

We conclude plaintiffs have not sufficiently pleaded substantive unconscionability so as to earn a hearing under Civil Code section 1670.5 to determine whether the class action waiver is in fact and law unconscionable. Plaintiffs' complaint does not demonstrate the Agreement is so one-sided that a class action is the only effective means of enforcing plaintiffs' rights under the Agreement.

Class action waivers have been invalidated as unconscionable where the individual claims are so small against the defendant that a class action waiver effectively operates as an exculpatory contract.[5] In *Discover Bank,* our Supreme Court invalidated a class action waiver in an adhesion contract between a bank and its credit card customers where the bank assessed a late fee on overdue payments a few hours before it was allowed to under the contract. Because the individual amounts were small, the class action waiver effectively exempted the bank from liability arising from its scheme. The Supreme Court determined that a class action waiver in such circumstances was unconscionable. (*Discover Bank, supra,* 36 Cal.4th at pp. 162–163.)

---

[5] Exculpatory contracts are "contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent . . . ." (Civ. Code, § 1668.) Such contracts are unenforceable.

The high court, limiting its holding to the facts before it, stated: "We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Discover Bank, supra,* 36 Cal.4th at pp. 162–163.)

 The Supreme Court has clarified that "*Discover Bank* was not intended to suggest that consumer actions involving minuscule amounts of damages were the only actions in which class action waivers would not be enforced. Rather, *Discover Bank* was an application of a more general principle: that although '[c]lass action and arbitration waivers are not, in the abstract, exculpatory clauses' (*Discover Bank, supra,* 36 Cal.4th at p. 161), such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy." (*Gentry, supra,* 42 Cal.4th at p. 457.)

Unlike in *Discover Bank,* plaintiffs' complaint does not establish that the Agreement's class action waiver acted as an exculpatory clause or unduly hindered plaintiffs from pursuing a legal remedy. Plaintiffs' amended complaint shows that a class action is not the only viable means for recovering plaintiffs' damages or enforcing the contract against Diamond Foods. The amended complaint seeks damages for the class of "at least $70 million." Divided evenly among 1,600 class action plaintiffs, the alleged size of the class, a damage award of $70 million would provide each plaintiff with an award of $43,750. Obviously, the actual awards would be larger or smaller than that depending on each grower's claim, but, when considered for unconscionability, requiring a grower to file an individual action for roughly $43,000 in damages does not shock the conscience.[6] (See *Arguelles-Romero v.*

---

[6] Diamond Foods asks us to take judicial notice of two separate demands for arbitration filed against it by two walnut growers who claim they were underpaid for the sale of their walnuts to Diamond Foods. The trial court denied Diamond Foods's request, as do we. Although the fact of these filings could be immediately verified with the American Arbitration Association (Evid. Code, § 452, subd. (h)), there is no judicially noticeable evidence in the record showing these two growers are parties to the Agreement or that they have not also taken other legal action against Diamond Foods on their claims.

*Superior Court* (2010) 184 Cal.App.4th 825, 844 [109 Cal.Rptr.3d 289] [a claim for $16,000 is not so small as to justify not enforcing class action waiver].)

Plaintiffs argue the class action waiver is unconscionable, even though it applies to both Diamond Foods and plaintiffs, because it effectively will limit only the growers from bringing a class action. This would be of more concern if a class action was the only feasible way of enforcing Diamond Foods's obligations under the Agreement. Because a class action is not necessary, such a minimal showing of substantive unconscionability is insufficient to meet plaintiffs' burden of showing a significantly greater degree of substantive unconscionability. Their minimal showing thus does not invalidate the class action waiver.

Plaintiffs claim the class action waiver is unconscionable under *Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court* (2005) 133 Cal.App.4th 396 [34 Cal.Rptr.3d 659] (*Mailbox Center*), a case from the Fourth Appellate District that invalidated a class action waiver in a standardized franchise agreement's arbitration clause. Plaintiffs emphasize *Mailbox Center* is significant because that court applied the rule of *Discover Bank* to a commercial contract, a franchise agreement, finding such agreements are similar to consumer and employment adhesion agreements. (*Id.* at p. 410.) As explained above, we do not find that point significant, as the doctrine of unconscionability applies to commercial contracts.

 We decline, however, to give *Mailbox Center* any effect in this case beyond echoing the general principles stated in *Discover Bank*. The *Mailbox Center* court determined a class arbitration waiver in a franchise agreement was unconscionable because the agreement was an adhesion contract, and because the franchisees demonstrated their causes of action were *amenable* under state arbitration law to classwide arbitration. Other than to cite to *Discover Bank*, the court did not examine whether the waiver in the franchise agreement was substantively unconscionable. It did not consider whether the waiver effectively acted as an exculpatory clause by preventing the franchisees from obtaining relief. (*Mailbox Center, supra*, 133 Cal.App.4th at pp. 408–411.) We believe the issue of a class action waiver's substantive unconscionability must be decided on its exculpatory effect, not merely on whether a class action may be an amenable or even favored remedy.

We conclude plaintiffs have not pleaded sufficient facts showing the class action waiver's unconscionability to survive Diamond Foods's motion to strike the class action allegations in the complaint. We turn next to their related argument, that the class action waiver is unenforceable as against public policy.

IV

*Enforceability as Against Public Policy*

Plaintiffs claim the class action waiver prohibits them from vindicating certain unwaivable statutory rights they possess, and thus the waiver is unenforceable as it violates public policy. We disagree.

Our Supreme Court has established that a class action waiver in an employment arbitration agreement is unenforceable if it prevents a person from vindicating unwaivable statutory rights. (*Gentry, supra*, 42 Cal.4th at p. 450 [statutory right to overtime wages and to pursue their recovery]; *Armendariz, supra*, 24 Cal.4th at pp. 100–113 [statutory right to be free from sexual discrimination in employment and to pursue redress].)

In *Gentry*, the high court added that an employment contract's class action waiver may not be enforceable where it prevented employees from vindicating their statutory rights and where it would pose a serious obstacle to the enforcement of that statutory right. (*Gentry, supra*, 42 Cal.4th at p. 450.)

Here, plaintiffs claim their complaint seeks in part to enforce their statutory right to have the purchase price for their walnuts stated in writing in a definite sum. Specifically, section 62801 of the Food and Agricultural Code states in relevant part: "[*U*]*nless the parties agree otherwise*, every contract for the sale of edible nuts shall be in writing and shall state the full purchase price in a definite sum which is to be paid in accordance with the terms of the contract . . . ." (Italics added.)

The statute's express language indicates plaintiffs' right to have the purchase price stated in a definite sum is not an unwaivable right. The right can be waived by the parties if they agree to do so. Thus, *Gentry* and *Armendariz* do not apply here.

Plaintiffs disagree with this reading of the statute. They assert the phrase "unless the parties agree otherwise" refers only to the parties' right to contract orally with each other, and that all written contracts must state the definite price. Plaintiffs rely on *Tos v. Mayfair Packing Co.* (1984) 160 Cal.App.3d 67 [206 Cal.Rptr. 459] (*Tos*), for this interpretation. In that case, the Fifth Appellate District stated in dicta that the phrase, which was added to the statute in 1983 and did not apply to the contract at issue, meant that parties for the purchase of nuts could agree to contract orally with each other. If they contracted in writing, the contract had to state the purchase price. (*Id.* at p. 77, fn. 4.)

The *Tos* court's statement is dicta and one we need not apply. As written to modify the entire statute, the phrase unambiguously states the parties may agree not to state the purchase price in a definite sum in a written contract. The phrase allows the parties to agree to any contractual arrangement in addition to a written contract with a definite price. In other words, the parties can waive the protections provided under the statute. Accordingly, the class action waiver is not void as against public policy and the enforcement of public rights as it does not affect an unwaivable statutory right.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Diamond Foods. (Cal. Rules of Court, rule 8.278(a).)

Raye, J., and Hull, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 10, 2010, S186734. Baxter, J., did not participate therein.