Filed 10/31/19

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| BAKERSFIELD COLLEGE et al., | C085099 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201380001636) |
| v. | |
| CALIFORNIA COMMUNITY COLLEGE ATHLETIC ASSOCIATION et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge. Reversed.

Foster Employment Law and Maloney Employment Law and C. Christine Maloney for Plaintiffs and Appellants.

Matheny Sears Linkert & Jaime and Ronald E. Enabnit for Defendant and Respondent California Community College Athletic Association.

Clousespaniac Attorneys and Richard R. Clouse and Erin A. Halas for Defendant and Respondent Southern California Football Association.


In this case, we are asked to determine the enforceability of an arbitration agreement under the law of unconscionability. "Unconscionability consists of both procedural and substantive elements. [Citation.] Procedural unconscionability

1

'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' [Citation.] 'Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.] Both elements must be present for a court to refuse to enforce an arbitration agreement. [Citation.] However, the elements do not need to be present in the same degree and are evaluated on a ' " 'sliding scale.' " ' [Citation.] ' " '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " ' [Citation.] 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 284-285.)

Defendant California Community College Athletic Association (Athletic Association) administers intercollegiate athletics for the California community college system. The parties agree that, as a condition of participating in the intercollegiate football league, plaintiff Bakersfield College (the College) agreed to be bound by the Athletic Association's bylaws and constitution, including a provision requiring the College to resolve any sanctions and penalty disputes by binding arbitration. Instead of proceeding through binding arbitration to challenge the sanctions and penalty decisions issued by the Athletic Association and codefendant the Southern California Football Association (the Football Association) (collectively defendants) against the College, the College and coplaintiffs Jeffrey Chudy[1] and the Kern Community College District[2]

---

[1]    Chudy is a faculty member at the College and the head coach of the College's football team.

[2]    Kern Community College District governs and operates the College.

(collectively plaintiffs) elected to file civil litigation. Plaintiffs argued they were excused from pursuing binding arbitration because the arbitration provision was unconscionable.

The trial court said the "issue [wa]s close," but ultimately, after severing the one-sided attorney fees subsections, found the arbitration provision was not unconscionable. The trial court, therefore, found plaintiffs' litigation was barred by the failure to exhaust their administrative remedies.

We agree with the trial court that this was a close case but conclude the arbitration provision was unconscionable. Accordingly, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Contract*

The Football Association is a football conference organized under the Athletic Association's constitution and bylaws to regulate intercollegiate football competition among 37 California community colleges within its geographic boundaries. Pursuant to the Athletic Association's constitution, the Football Association, as a conference, or its conference commissioner may impose sanctions on the Athletic Association's member colleges. The College is one such member college.

Each member college is required to follow and is subject to the Athletic Association's constitution and bylaws. As is pertinent here, article 7 of the Athletic Association's constitution sets forth an appeals process. The appeals process applies to an appeal defined as "a written request by the college president requesting a review of an inferior body's interpretation of the rules and/or the enforcement of a penalty." The process starts with a ruling by a conference commissioner, who is "responsible for the first level interpretation, ruling, and enforcement of th[e] *Constitution and Bylaws*." "The conference commissioner shall interpret and rule on the provisions of the *Constitution and Bylaws* for colleges, students, college administrators, and employees of member schools in his/her conference."

3

An appeal from a conference commissioner's ruling flows as follows: first to the conference appeals board (here, the Football Association), then to the Athletic Association appeals board, then to the Athletic Association board, and finally to binding arbitration before a three-person panel. The appeals are generally decided based on the original materials submitted at the first level of appeal and no additional materials may be provided at the next level of appeal.

The binding arbitration provision provides a panel shall be established to "include approximately twelve individuals who are familiar with the California Community Colleges, their procedures, their intercollegiate athletic programs and the [Athletic Association]." The panel members are appointed for three-year terms in a rotating manner.

The panel members shall be nominated by the Athletic Association's executive and the executive director of the Community College League of California (the League). Member colleges may also nominate a person to serve on the panel and "shall have a reasonable voice in the selection of the persons appointed to the Panel." The Athletic Association's executive director and the League's executive director "shall make the final decision regarding appointment."

When a college wishes to pursue binding arbitration, it must submit the arbitration request in writing to the Athletic Association's executive director within five working days of the Athletic Association board's denial of an appeal. At the same time, the college must give written notice of the "facts and issues to be determined" in arbitration. A party to the arbitration has the right to be represented by an attorney at any proceeding or hearing; "[h]owever, to minimize the expense and to encourage cooperation and collegiality, it is desired that the services of legal counsel not be over-utilized."

Within five working days after receiving a request for arbitration, the Athletic Association's executive director shall present a list of panel members to the Athletic Association board and the president of the appealing college. The Athletic Association

4

board and the president of the appealing college shall thereafter agree to three panelists to preside over the arbitration within five working days. If the appealing college does not timely participate, the Athletic Association board shall appoint the panelists.

The selected arbitration panel shall meet to hear the appeal no later than 18 working days after the panel selects a chair. "The colleges agree that they have waived the right to a testimonial hearing, to present evidence, and to cross-examine witnesses at the arbitration hearing." The arbitration panel has sole discretion to determine whether to hold a hearing, call for testimony, or receive evidence.

The arbitration panel's decision "shall be final and binding on the parties. There will be no further appeals and no court proceeding." "[I]f an appealing college does not prevail in its arbitration, the three (3)-member Arbitration Panel shall be authorized to award costs and fees against the college in favor of the [Athletic Association]." Further, "[i]f a college does not exhaust its rights under the stated appellate process, including binding arbitration, and instead commences litigation, it shall be liable for [the Athletic Association's] fees and costs of that litigation, unless the college is the prevailing party."

II

*The Litigation*

In May 2013, defendants sanctioned and penalized the College for several violations of the Athletic Association's bylaws because the College had provided football players with meals and access to work and housing opportunities not available to other students. The College filed an appeal of the decisions and proceeded through the first three steps of the appeals process. Its appeal was denied by the Football Association appeals board, the Athletic Association appeals board, and the Athletic Association board.

After its appeal was denied by the Athletic Association appeals board and before it appealed to the Athletic Association board, the College requested a copy of the 12-member arbitration panel master list. The Athletic Association denied the request

5

because it does not disclose the list to any member college until there is a demand for arbitration.

The College did not pursue binding arbitration and plaintiffs instead filed a petition for writ of mandate and complaint for breach of contract, violation of the fair procedure doctrine, and injunctive relief.

Plaintiffs thereafter filed a motion for judgment on the writ of mandate. In their opposition, defendants argued, among other things, that plaintiffs had failed to exhaust their administrative remedies by foregoing the binding arbitration process. Plaintiffs maintained they were excused from proceeding through binding arbitration because the arbitration provision was unconscionable. The trial court disagreed; plaintiffs appeal.

DISCUSSION

"The determination of arbitrability is a legal question subject to de novo review. [Citation.] We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.] Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo." (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277.) The party resisting arbitration, here the College, bears the burden of proving unconscionability. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*), *LLC* (2012) 55 Cal.4th 223, 247.)

I

*Procedural Unconscionability*

"Procedural unconscionability pertains to the making of the agreement and requires oppression or surprise. [Citations.] ' " 'Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form.' " ' " (*Magno v. The College Network, Inc.*, *supra*, 1 Cal.App.5th at p. 285.) " '[T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been

6

freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244.)

"The California Supreme Court has consistently stated that ' "[t]he procedural element of an unconscionable contract generally takes the form of a contract of adhesion . . . ." ' " (*Walnut Producers of California v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 646.) The unconscionability analysis, therefore, "begins with an inquiry into whether the contract is one of adhesion" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113) and a finding of a contract of adhesion is essentially a finding of procedural unconscionability (see *ibid.*; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1533 ["the threshold question is whether the subject arbitration clause is part of a contract of adhesion, thereby establishing the necessary element of procedural unconscionability"]; *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1054 [finding no error in trial court's conclusion the contract "was a contract of adhesion and, hence, procedurally unconscionable"]).

The trial court made the following undisputed factual findings pertinent to the procedural unconscionability analysis: "(1) the arbitration provision was drafted entirety by [the Athletic Association]; (2) the College had no ability to individually negotiate its terms; (3) it could not opt-out of the provisions; and (4) it thus had no meaningful choice but to accept the provision as drafted by [the Athletic Association]." The trial court also noted "the College is a large institution with its own general counsel and is thus presumably not a weak party that is unable to look out for its own interests." Nonetheless, the trial court explained, "[a]lthough the College is a large institution, it had to accept [the Athletic Association's] constitution and bylaws as written if it wanted to participate in intercollegiate athletics." The trial court also found "that [the Athletic

7

Association's] members, including the College, have the right a right [*sic*] to propose and vote on amendments to the constitution and bylaws, and thus to propose and vote on amendments to the challenged arbitration provision."

The trial court's "at least a *minimal degree* of procedural unconscionability" finding rested on the following synopsis of its reasoning: "[The provision] was drafted by [the Athletic Association], the College had no ability to individually negotiate or reject its terms, and its only real option was to agree to it or opt out of intercollegiate athletics entirely. Once it joined [the Athletic Association], however, the College gained the option of trying to amend the provision. If 'the determination of procedural unconscionability may turn on the absence of meaningful choice,' then surely it may also be affected by the presence of a meaningful voice. [Citation.] Here, the College had (and has) at least some voice in amending the arbitration provision, which lessens, even if it does not entirely eliminate, the procedural unconscionability in this case."

Plaintiffs agree with the trial court's procedural unconscionability finding that there was at least a minimal degree of procedural unconscionability; they argue the error arose from the trial court's substantive unconscionability analysis. Defendants assert there was no evidence of procedural unconscionability because the College had the ability to propose amendments to the arbitration provision once it became a member, and it failed to do so. The Athletic Association also argues the Athletic Association and the member institutions share the same interests and do not have an adversarial relationship, and article 7 exists for the benefit of the athletics programs of the member institutions. The Football Association adds the College was a sophisticated party, cannot argue surprise, and "it cannot be argued that [it] did not understand or appreciate the significance of the arbitration terms or understand that the College was bound by its provisions."

We disagree with the trial court's finding that "the right to propose and vote on amendments to the constitution and bylaws lessens (if not eliminates) the adhesive nature

8

of the arbitration provision" and reject defendants' argument in that regard as well.  That the College had the ability to propose amendments to the arbitration provision in the Athletic Association's constitution *after* it became a member and *after* the contract was formed is irrelevant to the unconscionability analysis.

" 'In determining unconscionability, our inquiry is into whether a contract provision was "unconscionable at the time it was made" ' " -- we are not concerned with what could have occurred thereafter.  (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1134.)  "Procedural unconscionability focuses on the manner in which the disputed clause is presented to the party in the weaker bargaining position.  When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present."  (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1100.)  Thus, although the ability to negotiate the terms of the contract is important and relevant to the procedural unconscionability analysis, the pertinent question is whether the College had the ability to negotiate the terms of the arbitration provision *when it became a member*, i.e., when it became subject to the arbitration provision.  The answer to that question is "no."

The Football Association cites *Trend Homes* for the proposition that "[w]here a party fails to present evidence that it attempted to negotiate a provision and were 'rebuffed,' it is inappropriate to find procedural unconscionability."  (*Trend Homes, Inc. v. Superior Court* (2005) 131 Cal.App.4th 950, overruled on other grounds in *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 545, fn. 5.)  The court, in *Trend Homes*, however, actually said:  "Here, the evidence does not support the conclusion the provision is procedurally unconscionable.  First, the record does not support the trial court's finding that the agreements are adhesive.  Real parties offered no evidence that they attempted to negotiate the provision and were rebuffed, *or they had no meaningful choice but to agree to the provision*.  The only evidence real parties presented

9

on this issue was their statements that they were never told the provision was negotiable or could be stricken. This does not establish, however, that Trend would not have stricken the provision had real parties objected. Notably, the seller was also required to initial the judicial reference provision, which supports the conclusion that the clause was negotiable." (*Id*. at p. 958, italics added.) The case therefore does not stand for the proposition advanced by the Football Association.

The undisputed facts, as stated by the trial court, are that the College had no ability to individually negotiate the terms of the contract at the time it was made, it could not opt-out of the arbitration provision, and it thus had no meaningful choice but to accept the arbitration provision as drafted by the Athletic Association. The uncontroverted evidence supports a finding of procedural unconscionability. This is especially true given the superior bargaining strength of the Athletic Association. As the trial court explained, the College had to accept the Athletic Association's terms if it wanted to participate in intercollegiate athletics. The ability to participate in intercollegiate athletic competitions is of substantial importance to both educational institutions and their students. (See *California State University, Hayward v. National Collegiate Athletic Assn.* (1975) 47 Cal.App.3d 533, 542 ["the opportunity to participate in intercollegiate athletics is of substantial economic value to many students"].) To provide this opportunity to its students, the College had no other alternative -- it had to be a member of the Athletic Association.

The arbitration provision was part of " 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength [the Athletic Association], relegate[d] to the subscribing party [the College] only the opportunity to adhere to the contract or reject it.' " (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 113.) Unlike *Trend Homes*, the arbitration provision was not separately initialed by the parties; instead, the provision was inconspicuous and located on pages 34 through 36 of the 48-page constitution and the 158-page combined document

10

consisting of the constitution and bylaws.  This supports the conclusion that the arbitration provision was presented on a take-it-or-leave-it basis.

We disagree with the Football Association's assertion that the College's sophistication as a party supports a finding of no procedural unconscionability.  As the trial court aptly explained:  "Courts have held that the unconscionability doctrine applies to business contracts as well as consumer contracts because 'even large business entities may have *relatively* little bargaining power, depending on the identity of the other contracting party and the commercial circumstances surrounding the agreement.' "  (See *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 489-490; see also *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 818, fn. 13 ["Although most of the [unconscionability] cases have arisen in the consumer context, adhesion contracts are also found in a commercial setting.  [Citations.]  The inquiry is simply whether the requisite characteristics (e.g., inequality of bargaining power) are present"].)  Here, "[a]lthough the College is a large institution, it had to accept [the Athletic Association's] constitution and bylaws as written if it wanted to participate in intercollegiate athletics."

The Football Association's reliance on lack of surprise also does not alter the analysis.  " 'Where an adhesive contract is oppressive, surprise need not be shown' " to establish procedural unconscionability.  (*Nyulassy v. Lockheed Martin Corp.*, *supra*, 120 Cal.App.4th at p. 1281.)  We further fail to see the relevance of the parties' non-adversarial relationship, as the Athletic Association contends, to the unconscionability analysis.  Contracting parties are generally not adversarial to one another at the time of contracting.  That does not mean, however, that the contract is enforceable per se when a dispute later arises in the parties' relationship.

Having found procedural unconscionability, we next scrutinize the substantive terms of the arbitration provision.  (*Baltazar v. Forever 21, Inc.*, *supra*, 62 Cal.4th at p. 1244 [" '[A] finding of procedural unconscionability does not mean that a contract will

11

not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided' "].)

II

*Substantive Unconscionability*

The substantive element of the unconscionability analysis "looks to the actual terms of the parties' agreement to 'ensure[] that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided." ' [Citation.] These formulations 'all mean the same thing.' [Citation.] Substantive unconscionability ' "is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party.' " ' [Citation.] 'The substantive component of unconscionability looks to whether the contract allocates the risks of the bargain in an objectively unreasonable or unexpected manner.' [Citation.] While private arbitration may resolve disputes faster and cheaper than judicial proceedings, it ' "may also become an instrument of injustice imposed on a 'take it or leave it' basis." ' [Citation.] ' "The courts must distinguish the former from the latter, to ensure that private arbitration systems resolve disputes not only with speed and economy but also with fairness." ' " (*Magno v. The College Network, Inc.*, *supra*, 1 Cal.App.5th at pp. 287-288.)

" '[T]he paramount consideration in assessing [substantive] unconscionability is mutuality.' " (*Nyulassy v. Lockheed Martin Corp.*, *supra*, 120 Cal.App.4th at p. 1281.) An arbitration agreement requires a " 'modicum of bilaterality,' " meaning the drafter cannot require another to submit to arbitration to pursue a claim but not accept the same limitation when it would act as the plaintiff, "without at least some reasonable justification for such one-sidedness based on 'business realities.' " (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 117.) "When only the weaker party's claims are subject to arbitration, and there is no reasonable

12

justification for that lack of symmetry, the agreement lacks the requisite degree of mutuality. [Citations.] As our [Supreme Court] recognized in *Armendariz*, 'an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences.' [Citation.] As the court also recognized, 'lack of mutuality can be manifested as much by what the agreement does not provide as by what it does.' " (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 657.)

Here, the binding arbitration provision limits the universe of covered disputes to those a member college or its students or employees could bring against the Athletic Association. The agreement provides the appeals process, including the binding arbitration requirement, applies to "a written request by the college president requesting a review of an inferior body's interpretation of the rules and/or the enforcement of a penalty." The appeals process commences when an appeal by "[a] member college, a student of the member college, or employees of the college" challenges a conference commissioner's decision to the conference appeals board.[3] A conference commissioner's role is to "interpret and rule on the provisions of the *Constitution and Bylaws* for colleges, students, college administrators, and employees of member schools in his/her conference."

Certainly, the Athletic Association would not bring the appeals subject to the appeals process. The arbitration provision thus lacks mutuality because the Athletic Association, as the drafter of the provision, would not accept the same limitation imposed on the College when it would act as the appellant or plaintiff. (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 117.) The Athletic Association

---

[3] Any appeal by a student, coach, or college representative "must have the support of the member college as indicated by the signature of the college president."

has provided no justification, much less reasonable justification, for such one-sidedness based on " 'business realities.' " (*Ibid.*)

Defendants argue the College forfeited the mutuality argument because it failed to raise it in the trial court. We disagree. In its second amended petition, the College alleged: "The [Athletic Association's] binding arbitration procedure is grossly one-sided and substantively unconscionable. The binding arbitration procedure applies only to appeals by member colleges of penalties and sanctions decisions. It is not an alternative dispute procedure applied evenhandedly to all disputes between the parties. The binding arbitration procedure does not compel the [Athletic Association] to submit any claims it might have against member colleges to arbitration and lacks mutuality. The arbitration provision contains other one-sided terms as well." The College also raised the one-sidedness of various subsections of the arbitration provision in its motion for judgment on writ of mandate. Moreover, unconscionability is ultimately a question of law, which we review de novo.

The Football Association further argues the provision is bilateral because it applies to "[t]hose wishing to use binding arbitration (Appellant)" -- meaning it could apply to an appeal brought by the Athletic Association. To construe the provision in the manner advanced would require us to read the sentence fragment in isolation, ignoring the remainder of the sentence and the preceding provisions establishing the scope of the appeals process. We decline to do so. The remainder of the quoted sentence states the arbitration request shall be made "in writing within five (5) working days of the denial of an appeal by the [Athletic Association] Board." As the Athletic Association concedes in its brief, the Athletic Association cannot appeal decisions made by its own board, and it is, therefore, clearly not subject to the provision. As to the scope of the appeals process, the constitution clearly establishes that the four-step appeals process applies solely to appeals signed by a college president; a college president would have no authority nor reason to sign an appeal on behalf of the Athletic Association.

14

The arbitration procedure lacks mutuality in other ways as well, perpetuating the one-sided and unreasonable nature of the provision. We provide a few examples, but do not analyze and discuss each individual subsection of the provision.

One example is the attorney fees and costs subsections, which the trial court severed. The first subsection authorizes the arbitration panel "to award costs and fees against the college in favor of the [Athletic Association]," if the college does not prevail in arbitration; the second provides a college "shall be liable for [the Athletic Association's] fees and costs of that litigation, unless the college is the prevailing party," if the college pursues civil litigation rather than proceeding through the appeals process. The procedure contains no reciprocal allowance for an award of attorney fees and costs against the Athletic Association if a college prevails.

The Football Association argues "Civil Code 1717 renders these provisions mutual as it would entitle any prevailing party to reasonable attorney's fees." The Athletic Association echoes this position. It is true Civil Code section 1717 " 'was enacted to make all parties to a contract, especially an "adhesion contract," equally liable for attorney's fees and other necessary disbursements.' " (*System Investment Corp. v. Union Bank* (1971) 21 Cal.App.3d 137, 163.) Indeed, "[t]he statute was designed to establish mutuality of remedy when a contractual provision makes recovery of attorney fees available to only one party, and to prevent the *oppressive use of one-sided attorney fee provisions*." (*Trope v. Katz* (1995) 11 Cal.4th 274, 285, italics added.) This does not, however, change the unconscionable nature of the one-sided provisions *as written by the Athletic Association*. (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 88 ["the attorney fee provision is not conscionable merely because Civil Code section 1717 might provide employees relief from the provision's one-sidedness"].)

The very short limitations period -- five working days from the denial of an appeal by the Athletic Association board -- is another indicator of substantive

unconsciorability.[4] (*Magno v. The College Network, Inc.*, *supra*, 1 Cal.App.5th at p. 291 ["An arbitral limitations period that is shorter than the otherwise applicable period is one factor that supports a finding of substantive unconscionability"]; *Nyulassy v. Lockheed Martin Corp.*, *supra*, 120 Cal.App.4th at p. 1283, fn. 12 ["the shortened limitations period . . . is *one factor* leading us to hold that the contract is substantively unconscionable"].) Not only must an appellant file a request for arbitration within five days, it must "give written notice of the facts and issues to be determined" at the same time. A five-day limitations period is an extremely short time to request arbitration, especially with the attendant requirement of providing notice of the facts and issues to be determined. As the trial court noted, it "is extremely [short even] by [the Athletic Association's] standards, because its constitution and bylaws allow ten days to request the first three levels of appeal, but only five days to request arbitration."

The Athletic Association argues the College simply needed to send an e-mail or letter to request an extension of time to file the appeal and, because the Athletic Association "had previously granted the College an extension of time to file an earlier appeal[,] there is no reason to believe that such a request from the College regarding the five-day limitation would have been denied." That may well be true, however, we determine whether a contract provision was " ' "unconscionable at the time it was made." ' " (*Sonic-Calabasas A, Inc. v. Moreno*, *supra*, 57 Cal.4th at p. 1134.)

The arbitration panel selection process is yet another indicator of substantive unconscionability. The three individuals to preside over an arbitration must be selected from the pre-established 12-person master list. The constitution provides the 12 panel

---

[4] The Athletic Association argues the College forfeited any reliance on this subsection to support its unconscionability argument because it did not rely on the subsection in the trial court. We review all provisions of the arbitration provision de novo to determine unconscionability, including the limitations period subsection that forms part of the challenged arbitration provision.

members are nominated by the Athletic Association's and the League's executive directors and they "shall make the final decision regarding appointment." The selection procedure delineates no standards or requirements to ensure impartiality or neutrality of the candidates. Further, although the constitution allows colleges to nominate a person to serve on the panel and provides the colleges "shall have a reasonable voice in the selection of the persons appointed to the Panel," such purported accommodations were illusory at the time the contract was made.

The trial court found, and no party disputes that, "in practice, the entire master list was solicited, and appointed, solely by the [Athletic Association's] Executive Director, with no input from member colleges." In his deposition, the executive director testified he never solicited feedback from member colleges before placing someone on the master list, there was no process to facilitate nominations from colleges, "[t]here [wa]s no such process established as to how the members would be able to offer or provide a reasonable voice," and the list was kept secret unless and until a college actually submitted an appeal to arbitration. Indeed, the College requested a copy of the master list of arbitrators in the absence of filing a request for arbitration, and the Athletic Association denied its request. The deposition testimony of the Athletic Association's executive director shows that this panel selection procedure has been in place since well before July 2012, the edition date of the constitution (i.e., the contract) at issue here.

In reality, the Athletic Association *unilaterally* selected all individuals on the master arbitration panel list and did so in secrecy, precluding the colleges from commenting on or objecting to any potentially biased panel member. A college would also have no way of knowing when to submit a nomination to fill a vacancy. This procedure does not achieve the "minimum levels of integrity" required to enforce an agreement to arbitrate. (See *Graham v. Scissor-Tail, Inc.*, *supra*, 28 Cal.3d at p. 825; see also *Magno v. The College Network, Inc.*, *supra*, 1 Cal.App.5th at p. 291 [procedure allowing party imposing arbitration provision to unilaterally select arbitrator and limiting

17

the subscribing party to providing or "reasonably" withholding consent was indicia of substantive unconscionability]; *American Home Assurance Co. v. Benowitz* (1991) 234 Cal.App.3d 192, 203-204 [provision allowing one party to unilaterally select arbitrator is unconscionable and unenforceable; such a process creates "a presumptive bias in favor of the party who made the selection"]; *Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 103 [neutral arbitrator requirement "essential to ensuring the integrity of the arbitration process"].)

## III

### *The Unconscionable Provisions Cannot Be Severed*

The final question is whether the unconscionable provisions warrant a refusal to enforce the entire arbitration agreement, or whether the offending provisions may be limited or severed to avoid an unfair result. (Civ. Code, § 1670.5, subd. (a); *Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 124.) "In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever *unless* the agreement is 'permeated' by unconscionability." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 802.)

"An agreement to arbitrate is considered 'permeated' by unconscionability where it contains more than one unconscionable provision. [Citation.] 'Such multiple defects indicate a systematic effort to impose arbitration on [the nondrafting party] not simply as an alternative to litigation, but as an inferior forum that works to the [drafting party's] advantage.' [Citation.] An arbitration agreement is also deemed 'permeated' by unconscionability if 'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.' [Citation.] If 'the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms,' the court must void the entire agreement." (*Magno v. The College Network, Inc.*, *supra*, 1 Cal.App.5th at p. 292.)

18

As noted above, the arbitration agreement contains several serious defects -- most significantly the lack of mutuality. The procedural unconscionability coupled with the substantive unconscionability renders the arbitration agreement so " 'permeated' by unconscionability [it] could only be saved, if at all, by a reformation beyond our authority." (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 182.) The arbitration agreement is therefore unenforceable, and the trial court erred in compelling arbitration of the College's claims.

DISPOSITION

The judgment is reversed. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/_____
Robie, Acting P. J.

We concur:

/s/_____
Duarte, J.

/s/_____
Renner, J.