Filed 11/26/13  Math Magicians v. Capital for Merchants CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MATH MAGICIANS, INC. et al., | B241937 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC457074) |
| v. | |
| CAPITAL FOR MERCHANTS LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony J. Mohr, Judge.  Affirmed.

Dostart Clapp & Coveney, James F. Clapp, James T. Hannink and Zach P. Dostart for Plaintiffs and Appellants.

Gaims Weil West, formerly Gaims, Weil, West & Epstein, Peter L. Steinman, Alan Jay Weil, Steven S. Davis, Corey E. Klein and David M. Berke for Defendant and Respondent.

19

# I.  INTRODUCTION

Plaintiffs, Math Magicians, Incorporated, and Deborah Sinness, appeal from an order granting the motion to strike their class action claim filed by defendant, Capital For Merchants LLC.  Plaintiffs filed a second amended class action complaint alleging causes of action for:  usury; money had and received; a violation of Business and Professions Code section 17200; and declaratory relief.  Defendant loaned Math Magicians, Incorporated money at an allegedly usurious interest rate.  Defendant moved to strike plaintiffs' class action claims.  The motion was based on a class action waiver in the parties' agreement.  The trial court granted the motion finding the waiver was not unconscionable and struck plaintiffs' class action claims without leave to amend.  Plaintiffs contend the class action waiver is unconscionable and would result in a waiver of their statutory rights.  Defendant argues plaintiffs' class action claims are barred because the waiver is enforceable and not unconscionable.  We affirm the order striking the class action claims without leave to amend.

# II.  BACKGROUND

## A.  Procedural History

On March 10, 2011, plaintiffs filed their class action complaint.  On November 28, 2011, plaintiffs filed their first amended class action complaint.  After plaintiffs filed their first amended complaint, defendant moved to strike the class allegations on January 11, 2012.  On February 8, 2012, the trial court granted defendant's motion to strike the class claims with leave to amend.  On March 7, 2012, plaintiffs filed their second amended class action complaint, which is the operative pleading.  On April 11, 2012, defendant filed its motion to strike the class allegations of the second amended complaint.

### B. Second Amended Complaint Allegations

Plaintiffs' second amended complaint contains causes of action for usury; money had and received; unfair competition; and declaratory relief. Math Magicians, Incorporated is a California corporation with its principal place of business in Quartz Hill, California. Ms. Sinness is the owner and, at the time the second amended complaint was filed, the sole employee of Math Magicians, Incorporated. Math Magicians, Incorporated tutors middle and high school students in math. Defendant is a New York company doing business in California. Defendant, a lending company, provides borrowers with what is termed a "merchant cash advance" which is a form of short term financing. The second amended complaint describes a merchant cash advance thusly: "In merchant cash advance, a finance company lends the borrower . . . a lump sum of money secured by the borrower's future credit card sales. The borrower is required to direct its credit card processing company to pay the finance company a percentage of the borrower's credit card receipts until the loan is repaid in full." Plaintiffs believe defendant is not licensed or otherwise authorized to make loans in California.

According to the second amended complaint, plaintiffs obtained a merchant cash advance from defendant in June 2010. At that time, plaintiffs faced severe financial difficulties. In 2010, Math Magicians, Incorporated suffered a loss of $24,046. Math Magicians, Incorporated paid Ms. Sinness a salary of $25,000, her only source of income.

Prior to the merchant cash advance, Math Magicians, Incorporated had the following financial problems: three months behind in its rent payment; two to three months behind in paying utility bills and service vendors; and credit card debts it could not afford to pay. Ms. Sinness had "maxed out her personal credit cards" and was behind on her payments. In April 2010, Ms. Sinness sought a business loan. She discovered she did not qualify. Ms. Sinness had no equity in her home and no friends and family from whom she could borrow money.

Ms. Sinness "came across" an unidentified company offering a merchant cash advance in June 2010. At the time, she did not know what a merchant cash advance was.

21

Ms. Sinness obtained her credit card statements from her processing company and submitted them with her application to the unspecified company. The unidentified company turned her down.

Ms. Sinness shortly thereafter received a phone call from defendant. Her credit card processing company had forwarded her information to defendant. Defendant's salesperson told Ms. Sinness that defendant and her processor had a business relationship. As a result, defendant could approve her for a merchant cash advance. Ms. Sinness completed an application and submitted bank statements and organizational documents to defendant. Ms. Sinness was approved for the advance a day or two later. Defendant's salesperson never explained that Math Magicians, Incorporated would be waiving its right to participate in a class action, a jury trial, and certain remedies.

On June 14, 2010, Ms. Sinness received the "Receivables Purchase Agreement" from defendant. An e-mail directed Ms. Sinness to initial and sign all pages. Defendant did not offer to negotiate any terms in the agreement. Defendant did not explain any of the terms of the agreement. There is no allegation Ms. Sinness requested to negotiate any terms of the agreement. Ms. Sinness was desperate for money. She did not qualify for a business loan or a merchant cash advance from another company. She was behind on the payments of her business and personal debts. Ms. Sinness was on the verge of shutting down her company. Ms. Sinness had no legal training and no money to hire an attorney to explain the agreement to her.

According to the second amended complaint, defendant had superior bargaining power compared to plaintiffs. Defendant has made hundreds of merchant cash advances in California and thousands nationwide. According to defendant's Web site, it is on pace to advance over $40 million to new clients. Defendant is also a partner of North American Bancard, which processes $6 billion in credit card transactions annually and has relationships with over 70,000 businesses nationwide. Defendant is a sophisticated and experienced finance company with ample financial resources.

In November 2010, plaintiff obtained another merchant cash advance from defendant. The terms were identical to the June 2010 advance. Plaintiffs' cash flow was

22

severely limited because they paid 25 percent of their credit card receipts to defendant. Plaintiffs were paying off the first advance plus over $3,600 in interest. Math Magicians, Incorporated's business slowed down because of the approaching holiday. Defendant again did not explain or negotiate the agreement. Ms. Sinness had no money to hire an attorney and did not understand the waivers she signed.

The second amended complaint also contains allegations concerning suitability of the present case for class treatment. Plaintiffs paid less than $6,000 in interest in total. Plaintiffs do not have the money to hire an attorney on an hourly basis to pursue these claims. Few attorneys would take a claim worth $6,000 on a contingency basis.

According to the second amended complaint: "[I]f the class action waiver were enforced, [defendant] would avoid liability for its wrongdoing. Plaintiffs allege that disputes between [defendant] and its customers predictably involve small amounts of damages, that [defendant] has superior bargaining power as compared to its customers, and that [defendant] is engaging in a scheme to evade California's usury law and deliberately cheat large numbers of customers out of individually small amounts of money. A class action is the only viable means with which this case could be brought. Without the class action remedy, it would be impossible for those injured by [defendant] to vindicate their rights. This is the case because the individuals who have been harmed by [defendant's] conduct are not likely to have the financial resources to seek legal redress, and even if they did, it is unlikely any attorney would represent them for such a small claim. Furthermore, because the Agreement does not label the product as a loan or use the phrase 'interest rate,' it is unlikely that an individual would recognize that [defendant's] advances are really usurious loans and that they may have claims under California law. Therefore, in practical terms, the class action waiver works to exculpate [defendant] from liability."

Plaintiffs' two merchant cash advances amounted to $13,358 and $9,380, respectively. The effective annual interest rate for both advances exceeded 75 percent. The merchant cash advances are loans. Defendant requires the merchant cash advance be repaid in full. Defendant's only obligation is to advance cash to the borrower. Defendant

23

does not bear any financial risk other than the borrower being unable to pay. Defendant requires borrowers to reimburse it for any losses incurred related to the advance. In the event of a default, defendant is entitled to accelerate the borrower's payments. Borrowers must submit a credit application. Borrowers must agree to a credit check prior to entering into the merchant cash advance agreement. Defendant underwrites the merchant cash advance by assessing the borrower's creditworthiness. Defendant collateralizes the merchant cash advance by filing Uniform Commercial Code-1 financing statements. Defendant requires owners of the borrowers, such as Ms. Sinness, to execute personal guarantees.

Plaintiffs included as an exhibit with their second amended complaint a copy of the June 14, 2010 receivables purchase agreement. The pertinent provision concerning class action waivers was located at the bottom of page 5 to the top of page 6 in bold, capitalized font: "*JURY TRIAL; LIMITATIONS ON ACTION*. THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY COURT PRESIDING OVER ANY SUIT, ACTION OR PROCEEDING ARISING UNDER THIS AGREEMENT, UNLESS THE WAIVER IS PROHIBITED BY LAW. THE PARTIES ACKNOWLEDGE THAT THIS WAIVER IS MADE KNOWINGLY AND VOLUNTARILY. THE PARTIES HAVE BEEN GIVEN AMPLE TIME AND OPPORTUNITY TO SEEK ADVICE OF COUNSEL PRIOR TO EXECUTION OF THIS AGREEMENT. THE MERCHANT HEREBY WAIVES, INSOFAR AS PERMITTED BY LAW, ANY RIGHT TO PURSUE A CLAIM AGAINST CFM AND/OR ITS SUCCESSORS AND ASSIGNS AS PART OF A CLASS ACTION, PRIVATED ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION."


C. Defendant's Motion To Strike Class Allegations


On April 11, 2012, defendant filed its motion to strike the class allegations from the second amended complaint without leave to amend. Defendant argued all putative

class action members signed a class action waiver. Defendant contended plaintiffs failed to establish procedural or substantive unconscionability regarding the class action waiver.

On May 3, 2012, plaintiffs filed their opposition. Plaintiffs argued the agreement was procedurally unconscionable because there was no opportunity to negotiate and defendant had vastly superior bargaining power. Plaintiffs also contended it was substantively unconscionable because the small claim amount would effectively exculpate defendant from liability. Plaintiffs asserted few attorneys would take a claim worth $6,000 on a contingency basis. Plaintiffs also argued individuals would be highly unlikely to recognize defendant's advances were actually usurious loans. Plaintiffs contended in the alternative the class action waiver is unenforceable under *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 457 (*Gentry*). Plaintiffs reasoned the class action waiver was unenforceable because it would result in the forfeiture of usury statutory rights.

On May 9, 2012, defendant filed its reply. Defendant asserted plaintiffs pled no lack of market alternatives or surprise to establish procedural unconscionability. Defendant argued plaintiffs' damage claim was $35,000 and too high to render the waiver exculpatory. Defendant argued leave to amend should not be granted because plaintiffs identified no additional facts that would change the result. Defendant argued *Gentry* applies only in the wage and labor context and usury is subject to numerous exceptions.

D. Hearing And Order

On May 16, 2012, the trial court granted the motion to strike and denied leave to amend for the reasons cited in defendant's moving papers. On May 17, 2012, the trial court issued its order granting the motion. The trial court found plaintiffs did not demonstrate procedural unconscionability because they sought loans from only two companies. The trial court found no substantive unconscionability because plaintiffs' potential claims were large enough to incentivize pursuing individual actions. The trial

court found *Gentry* did not extend beyond wage and hour cases.  On June 15, 2012, plaintiffs  appealed the order.

## III.  DISCUSSION

### A.  Overview

Pursuant to Code of Civil Procedure section 436:  "The court may, upon a motion made pursuant to Section 435, or at any time in its discretion, and upon terms it deems proper:  [¶]  (a)  Strike out any irrelevant, false, or improper matter inserted in any pleading.  [¶]  (b)  Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."  As noted, the trial court granted defendant's motion to strike the class allegations from plaintiffs' second amended complaint.    The viability of class claims may be challenged at the pleading stage.  (*Linden v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 440; *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 214-215.)  An order striking class allegations from a complaint is appealable.  (*Walnut Producers of Cal. v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 641 (*Walnut Producers*); *Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320, 1322, fn. 2.)

Plaintiffs allege the class action waiver present in the receivables purchase agreement is unconscionable.  Civil Code section 1670.5, subdivision (b), provides, "When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."  We review the trial court's order de novo.  (*Walnut Producers*, *supra*, 187 Cal.App.4th at p. 642; *Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1316 ["The issue whether a contract provision is unconscionable is a question of law."] (*Morris*).)

Regarding an appellate court's reviewing role, the Third District Court of Appeal held: "At the pleading stage of this case, where [the defendant] has sought to strike the class allegations, and plaintiffs assert the contractual prohibitions of those class allegations are unconscionable, our review under Civil Code section 1670.5, subdivision (b), is to determine de novo whether plaintiffs have pleaded sufficient facts demonstrating the class action waiver *may* be unconscionable. [Citation.] If plaintiffs have met this burden, they are entitled to a full evidentiary hearing at which the trial court can definitively determine whether the class action waiver is unconscionable." (*Walnut Producers*, *supra*, 187 Cal.App.4th at p. 642, citing *Morris v. Redwood Empire Bancorp*, *supra*, 128 Cal. App.4th at pp. 1316-1324.) In reviewing this order, we assume plaintiffs' factual allegations in the operative pleading are true. (*Walnut Producers*, *supra*, 187 Cal.App.4th at p. 642; *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 53.)

Plaintiffs argue they pled sufficient facts to show the class action waiver was unconscionable. Plaintiffs assert the waiver was procedurally unconscionable because: it was a contract of adhesion; they alleged lack of market alternatives; and Ms. Sinness was surprised by the class action waiver. Plaintiffs further contend the waiver was substantively unconscionable because: the class action waiver is one-sided; the class action waiver clause is exculpatory under *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 161, overruled by *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __, __ [131 S.Ct. 1740, 1753] (*Discover Bank*); and their claims were not large. In the alternative, plaintiffs argue the class action waiver was unenforceable because it would result in waiver of statutory rights.

B. Unconscionability

1. Overview

Our Supreme Court held: "'[T]he [unconscionability] doctrine has ''both a "procedural" and a "substantive" element,' the former focusing on ''oppression''' or

27

"'surprise'" due to unequal bargaining power, the latter on "'overly harsh'" "or '"one-sided"' results." [Citation.]  The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, "'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" . . .  [¶]  Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.' [Citations.]" (*Discover Bank v. Superior Court*, *supra*, 36 Cal.4th at p. 160; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US) LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*); *Walnut Producers*, *supra*, 187 Cal.App.4th at p. 645.)

Our Supreme Court noted:  "'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.]  But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.]  In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114; accord, *Walnut Producers*, *supra*, 187 Cal.App.4th at p. 645; *Morris*, *supra*, 128 Cal.App.4th at p. 1317, fn. 5.)

## 2.  Procedural Unconscionability

Plaintiffs argue because the receivable purchases agreement was an adhesion contract, it was generally procedurally unconscionable.  Defendant contends an adhesion contract is not sufficient by itself to establish procedural unconscionability.  The parties do not dispute plaintiffs' allegations that the receivable purchases agreement is an adhesion contract.

Plaintiffs rely on *Discover Bank*, *supra*, 36 Cal.4th at page 160 and *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071. Our Supreme Court has held an adhesion contract is sufficient to establish at least a *minimal degree of procedural unconscionability*. (*Discover Bank*, *supra*, 36 Cal.4th at p. 160; *Little v. Auto Stiegler, Inc.*, *supra*, 29 Cal.4th at p. 1071 ["'The procedural element of an unconscionable contract generally takes the form of a contract of adhesion . . . .'"]; see *Gentry, supra,* 42 Cal.4th at p. 469 ["Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.' . . ."].)

Defendant asserts commercial contracts require more than allegations of adhesion. Defendant argues plaintiffs are required to show oppression by lack of market alternatives. Defendant relies on: *Morris, supra*, 128 Cal.App.4th at page 1320; *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 768 (*Dean Witter*), and *Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466, 481-482 (*Wayne*). In *Morris*, the plaintiff obtained from the defendant a merchant account to process customers' credit cards. (*Morris*, *supra*, 128 Cal.App.4th at p. 1311.) The merchant agreement charged various fees, including a $150 termination fee. (*Ibid.*) The plaintiff later canceled the merchant agreement and paid the termination fee. (*Ibid.*) He filed an action against the defendant, alleging the termination fee was and void as unreasonable. (*Ibid.*) The defendants successfully demurred and the Court of Appeal affirmed. (*Id.* at p. 1325.)

Our Fourth District colleagues found the plaintiff failed to allege procedural unconscionability. (*Morris*, *supra*, 128 Cal.App.4th at pp. 1320-1321.) The appellate court concluded the plaintiff had alleged an adhesion contract. (*Id.* at p. 1319.) The appellate court further held: "Our recognition of the merchant agreement as an adhesion contract, however, heralds the beginning, not the end, of inquiry into its enforceability. . . . [¶] . . . Although adhesions contracts often are procedurally oppressive, this is not always the case. [Citation.] Oppression refers not only to an absence of power to negotiate the terms of a contract, but also to the absence of

29

reasonable market alternatives." (*Id.* at pp. 1319-1320.)  Our Fourth District colleagues found:  "[The plaintiff] failed to allege he could not have obtained merchant credit card services from another source on different terms.  Moreover, unlike situations where the weaker party is under immediate pressure not to seek out alternative sources, [the plaintiff] was under no such compulsion in attempting to start his business." (*Id.* at p. 1320.)

In *Dean Witter*, the plaintiff opened an individual retirement account with the defendant.  (*Dean Witter*, *supra*, 211 Cal.App.3d at p. 762.)  The plaintiff liquidated his account and the defendant deducted a $50 termination fee.  (*Ibid.*)  The plaintiff filed a class action complaint arguing the termination fee was unconscionable.  (*Id.* at p. 763.)  The trial court ordered all claims to proceed as a class action.  The defendant filed mandate petition seeking to set aside the trial court's order.  (*Ibid.*)

The First District Court of Appeal found the termination fee was not unconscionable.  (*Dean Witter*, *supra*, 211 Cal.App.3d at p. 772.)  The appellate court held:  "We believe that any claim of 'oppression' may be defeated if the complaining party had reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable.  If 'oppression' refers to the 'absence of meaningful choice,' then the existence of a 'meaningful choice' to do business elsewhere must tend to defeat any claim of oppression." (*Id.* at p. 768.)  Our First District colleagues concluded:  "[The plaintiff] tacitly equates the notion of an adhesion contract with that of 'oppression' in his unconscionability analysis.  While we recognize significant overlap between the two concepts, we are not prepared to hold that they are identical.  Were we to accept such an equation, *every* form contract not subject to negotiation between the parties would be deemed oppressive, totally disregarding the undisputed ability of a contracting party to choose to obtain that for which he bargained from other sources." (*Id.* at p. 769.)

In *Wayne*, the plaintiff purchased declared value coverage for a shipment from the defendant.  (*Wayne, supra*, 135 Cal.App.4th at p. 473.)  The plaintiff alleged the defendant charged an excessive insurance premium which was unconscionable under the

Consumer Legal Remedies Act. That is, plaintiff asserted the pricing of the declared value coverage was unconscionable. (*Ibid.*) The defendant moved for summary judgment. (*Id.* at pp. 473-474.) The trial court granted defendant's summary judgment motion. (*Id.* at p. 474.)

Our colleagues in Division Seven of this appellate district ruled summary adjudication was correctly issued as to a claim for unconscionable pricing of the declared value coverage. (*Wayne*, *supra*, 135 Cal.App.4th at pp. 471, 480-484.) The appellate court held: "[T]he defendant gives its customers the option to ship packages without purchasing the coverage, as well as to obtain excess value coverage from other carriers. . . . [P]otential customers have a wide range of choices other than shipping their packages [with the defendant] . . . . There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices . . . ." (*Id.* at p. 482.)

Plaintiffs have failed to allege meaningful choices of reasonably available alternative funding sources were unavailable. As a result, there are insufficient allegations of oppression. In *Morris*, *supra*, 128 Cal.App.4th at page 1320, the Court of Appeal explained: "Oppression refers not only to an absence of power to negotiate the terms of a contract, but also to the absence of reasonable market alternatives. In *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, our state's highest court recognized the point at which an adhesion contract becomes oppressive: 'In many cases of adhesion contracts, the weaker party lacks not only the opportunity to bargain but also *any realistic opportunity to look elsewhere for a more favorable contract;* he must either adhere to the standardized agreement *or forego the needed service.*' (*Id.* at p. 711, italics added.) Conversely, 'the "oppression" factor of the procedural element of unconscionability may be defeated, if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable.' (*Dean Witter, supra,* 211 Cal.App.3d at p. 772.)"

31

Later, in *Morris*, *supra*, 128 Cal.App.4th at page 1320, the Court of Appeal provided examples of where an adhesion contract was oppressive: "Of course, not every opportunity to seek an alternative source of supply is 'realistic.' Courts have recognized a variety of situations where adhesion contracts are oppressive, despite the availability of alternatives. For example, a sick patient seeking admittance to a hospital is not expected to shop around to find better terms on the admittance form. (See *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92.) Similarly, "'few employees are in a position to refuse a job because of an arbitration agreement'" in an employment contract. (*Little, supra,* 29 Cal.4th at p. 1071.)"

Thereafter, the Court of Appeal in *Morris* discussed why the operative complaint's allegations in that case failed to allege sufficient facts demonstrating oppression: "In the present case, Morris failed to allege he could not have obtained merchant credit card services from another source on different terms. Moreover, unlike situations where the weaker party is under immediate pressure not to seek out alternative sources, Morris was under no such compulsion in attempting to start his business. In a similar context, the court in *West v. Henderson* (1991) 227 Cal.App.3d 1578 (*West*), rejected an unsophisticated tenant's claim of oppression in entering into a commercial lease for a sandwich shop: 'The only oppression on [tenant] we perceive in the circumstances surrounding the signing of the lease was self-imposed. [Tenant] was not in pursuit of life's necessities; this was a business venture. Knowing her own inexperience, she signed the lease without consulting an attorney . . . .' (*Id.* at p. 1587.) Based on the allegations of Morris's second amended complaint, we are able to discern little oppression in the formation of the merchant agreement." (*Morris*, *supra*, 128 Cal.App.4th at pp. 1320-1321.)

Here, plaintiffs allege only two efforts were made to secure a merchant cash advance. There is no allegation Ms. Sinness sought to secure more favorable terms than those provided by defendant. There were allegations she could not secure loans from family or friends. Ms. Sinness could not secure commercial credit that had a real property security requirement because she had no equity in her home. She tried to obtain

32

a merchant cash advance from only one other company before agreeing to work with defendant. Moreover, the second amended complaint contains no allegations that more favorable terms were unavailable from companies offering merchant cash advance funds or other lending arrangements. And, there is no allegation Ms. Sinness made any effort to negotiate the removal of the class action waiver from the Receivables Purchase Agreement. Thus, plaintiffs have not shown oppression.

Plaintiffs also argue they were surprised by the class action waiver. This argument is unpersuasive. Our Supreme Court held: "'"[S]urprise [occurs] where the allegedly unconscionable provision is hidden within a prolix printed form."'" (*Pinnacle*, *supra*, 55 Cal.4th at p. 247 quoting *Morris v. Redwood Empire Bancorp*, *supra*, 128 Cal.App.4th at p. 1317.) The receivables purchase agreement provision discussing class action waiver was in capitalized and in bold font. The term was not hidden within a prolix form. Any allegation of procedural unconscionability is quite low.

### 3. Substantive Unconscionability

Plaintiffs argue the receivables purchase agreement was substantively unconscionable because it was overly harsh, one-sided and exculpatory. Defendant does not dispute the class action waiver was one-sided. However, defendant argues the waiver is not exculpatory because plaintiffs' claimed damages are high.

Our Supreme Court has explained: "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one side-sided as to "shock the conscience."' [Citation.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 246; *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1213; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532.) In addition, substantive unconscionability comes into play when there is a contractual term which reallocates a bargain's risk in an objectively unreasonable or unexpected fashion. (*Walnut Producers*,

33

*supra*, 187 Cal.App.4th at p. 647; *A & M Produce Co. v. FMC Corp*. (1982) 135 Cal.App.3d 473, 487.)

Plaintiffs rely on *Discover Bank* and *Gentry* to argue a class action waiver would exculpate defendant from liability. In *Discover Bank,* our Supreme Court held, "[T]he principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that . . . appl[ies] to contracts generally." (*Discover Bank*, *supra*, 36 Cal.4th at p. 165; accord, *Gentry*, *supra*, 42 Cal.4th at p. 453-454.) Our Supreme Court held in *Discover Bank*: "We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Discover Bank*, *supra*, 36 Cal.4th at pp. 162-163.)

None of the foregoing principles apply here. Plaintiffs secured funding without providing any security apart from future customer credit card receipts. Defendant's risk was substantial in that it relied not on existing security but future customer credit card receipts from a troubled business venture. Requiring plaintiffs to waive the right to participate in a class action does not shock the conscience. Nor is it objectively unreasonable or unexpected for a business lender offering funds to a troubled business, as a fair part of the bargain, to secure a class action waiver.

Finally, plaintiffs have offered only conclusory allegations as to why a class action waiver would exculpate defendant from any misconduct. Common sense tells us that this is not a case involving consumers seeking small amounts of damages. The lending arrangement is one which involves substantial sums of money being moved through

34

credit card accounts. Further, plaintiffs' second amended complaint seeks a cancellation of indebtedness. Plaintiffs also requested up to treble damages for the approximately $6,000 interest. It is unclear whether plaintiffs seek the principal based on their pleadings. Even if they are not, however, plaintiffs' damages could amount to approximately $18,000 in damages. This is not a small amount as contemplated in *Discover Bank* and its progeny. (See *Discover Bank*, *supra*, 36 Cal.4th at p. 159 [plaintiff recovered $29]; *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 844 [finding amount exceeding $16,000 is not so small that individuals would not be willing to spend time and effort to pursue individual claim].) In addition, there is an attorney fee clause which is fully enforced against defendant if either plaintiff prevails. (Civ. Code, § 1717, subd. (a); *PNEC Corp. v. Meyer* (2010) 190 Cal.App.4th 66, 72-73 [guarantor may recover attorney fees].)

Plaintiff argues there is no bright-line rule for determining a claim is so small it is impractical to pursue an individual action. Plaintiffs rely on *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 745 (*Bell*). In *Bell*, our colleagues in the First District opined: "[T]he size of individual claims does not necessarily have a bearing on the consideration of judicial efficiency favoring class actions. Whatever the size of the claims, a class action may be required 'when the parties are numerous, and it is impractical to bring them all before the court,' as provided by Code of Civil Procedure section 382." (*Ibid.*) *Bell* is not informative here because it did not involve a class action waiver. There is a difference between a class action's permissibility and a class action waiver's unconscionability. The class action waiver in the receivables purchase agreement is not substantively unconscionable in any material way.

### C. Waiver Of Statutory Rights Under *Gentry*

Plaintiffs argue the class action waiver functions to forfeit their rights to recover for usury. Plaintiffs rely on *Gentry*, *supra*, 42 Cal.4th at pages 457-461. In *Gentry*, the plaintiff sought relief regarding minimum wage and overtime compensation. (*Id.* at p.

35

455.) The rights to legal minimum wage and overtime compensation are unwaivable. (*Id*. at p. 456.) Our Supreme Court concluded in wage and hour cases, a class action waiver would have an exculpatory effect and undermine the statutory right. (*Id.* at p. 457.) Our Supreme Court identified several factors establishing such a situation: "First, individual awards in wage-and-hour cases tend to be modest. [¶] . . . [¶] A second factor in favor of class actions for these cases, . . . is that a current employee who individually sues his or her employer is at greater risk of retaliation. [¶] . . . [¶] Third, some individual employees may not sue because they are unaware that their legal rights have been violated." (*Id.* at pp. 457-461; see *Arguelles-Romero v. Superior Court, supra,* 184 Cal.App.4th at pp. 840-841; *Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 169-170.)

To begin with, many of our prior unconscionability comments apply equally to plaintiffs' *Gentry*-based contentions. Plaintiffs offer only conclusory allegations that judgments in usury litigation tend to be modest as may be the case with wage and hour violation litigation. As noted, there is an attorney fee clause in this case which is enforceable in favor of both plaintiffs. Moreover, unlike *Gentry*, there is no risk of workplace retaliation. Simply stated, denying class treatment gives rise to no substantial potentiality of exculpating defendant from any alleged unlawful lending practices. Finally, as noted above, the allocation of risk in this contract is such that it is reasonable to require, as a condition of handing over substantial amounts of sums to a troubled business entity, a class action waiver.

## IV. DISPOSITION

The order granting the motion to strike the class action claim is affirmed. Defendant, Capital For Merchants Limited Liability Company, is awarded its appeal costs from plaintiffs, Math Magicians, Incorporated and Deborah Sinness.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

I concur:

KRIEGLER, J.

MOSK, J., Dissenting

I dissent.

The trial court struck the class action allegations in the second amended complaint. The facts alleged are sufficient at least, at the pleading stage, to justify the class action allegations. The issue here is not whether plaintiffs have stated a cause of action, but only whether the allegations in the second amended complaint are sufficient to state that the class action waiver provision is unconscionable

The allegations are sufficient to state that the class action waiver provision is procedurally unconscionable. There is no dispute that the provision is part of a contract of adhesion. In order to show that they had to accept the class action waiver provision along with other provisions, plaintiffs alleged that they had no alternative sources of financing. They alleged they tried to obtain other sources of funding, but were unsuccessful. They also alleged that defendant represented it could approve plaintiffs for a loan ("merchant cash advance") "when other companies could not do so." Plaintiffs further alleged they "did not qualify for either a business loan or a merchant cash advance with another company." There is no indication that the waiver provision in question was negotiable. Plaintiffs allege they had no lawyer, and the individual plaintiff, Ms. Sinness, had no legal training.

Defendant and the trial court suggest that because plaintiff was such a risk, it was commercially feasible for defendant to extract such conditions as a class action waiver. This makes a condition for unconscionability—no other alternative—nugatory. It is because plaintiffs are in distress that there is procedural unconscionability. Defendant

1

should not have carte blanche to avoid liability for statutory violations just because its customer is desperate.

Paragraph 15 of the agreement is in bold, capital letters. But the heading is "Jury Trial; Limitation on Action"—not waiver of a class action. Thus it "did not explain the essence [of the provisions] or otherwise convey anything meaningful to any entry-level purchaser." (See *Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081, 1090.) The clause is in a 12 page, single-spaced document. It also provides a waiver of a trial by jury. Paragraph 8 of the agreement, which applies to Ms. Sinness, is the personal guarantee provision and contains a waiver of a trial by jury and a class action. It is not in bold.

In *Morris v. Redwood Empire Bankcorp* (2005) 128 Cal.App.4th 1305, the plaintiff argued that a $150 termination fee in connection with a credit card processing agreement was unconscionable. The court held the plaintiff failed to allege he could have obtained different terms from another source and there was no compulsion. (*Id.* at p. 1320.) Here, plaintiffs alleged there were no reasonable alternatives, and they were under immediate pressure to accept the agreement. Assuming that plaintiffs should have tried others for financing is based on pure speculation that there were others to contact.

In *Dean Witter Reynolds v. Superior Court* (1989) 211 Cal.App.3d 758, plaintiff alleged that a $50 termination fee defendant charged to close plaintiff's individual retirement account was unconscionable. But plaintiff was an attorney and admittedly a sophisticated investor. Also plaintiff could have chosen other financial institutions that did not charge termination fees. (*Id.* at pp. 762, 771.) Here, plaintiffs were not in a comparable position regarding understanding the clause in question and reasonable alternatives.

In *Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466, plaintiff sought a determination that the price of shipping insurance was unconscionably high. Defendant in a motion for summary judgment found that plaintiff had a "wide range" of market alternatives (*id.* at p. 482)—a factor not established here. It should be noted that the

2

"meaningful alternatives" or "marketplace alternatives" argument has been rejected by federal courts as not consistent with California cases. (See *Shroyer v. New Cingular Wireless Services, Inc.* (9th Cir. 2007) 498 F.3d 976, 985, overruled on another ground in *AT&T Mobility LLC v. Concepcion* (2011) __ U.S. __, 131 S.Ct. 1740.)

The class action provision is part of an agreement that is substantively unconscionable, for it is overtly one-sided. Section 3 of the agreement limits plaintiffs' rights to exemplary, special, and consequential damages. Section 13 of the agreement provides that any amounts plaintiffs owe shall be charged interest at the rate of 1.5 percent per month or 18 percent per year. This appears to be an illegal penalty. (*Garrett v. Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 740.) Section 18 of the agreement authorizes defendant to withdraw directly from plaintiffs' bank account "any amount due under this agreement"—a questionable self-help provision.

By precluding class actions, defendants have, in large part, insulated themselves from liability. Plaintiffs do not claim the principal of the loan obligation as suggested by the trial court, but rather interest plus treble damages because of alleged usury. This could be an amount of $20,000 according to plaintiffs.[1]

The reality is that few, if any, lawyers will pursue a claim for such an amount. The Superior Court has held in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*) that a class action waiver is unenforceable if it has the practical effect of making it more difficult for those damaged to pursue a legal remedy. The court said, "Indeed, the Court of Appeal in *Bell* [v. *Farmers Ins. Exchange* (2004)] 115 Cal.App.4th 715 rejected the argument that even an award as large as $37,000 would be 'ample incentive' for an individual lawsuit for overtime pay, and would obviate the need for a class action, pointing to the expense and practical difficulties of such individual suits." (*Id.* at p. 458; see *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1295 [suggested

---

[1]     Plaintiffs did not pray for attorney fees.

3

class action waiver when claims were $26,500 was not subject to invalidation][2];
*Quinonez v. Empire Today LLC* (N.D. Cal. 2010) 2010 U.S. Dist. LEXIS 117393
[refused to enforce class action waiver when claims accrued $22,000].)  *Gentry* should
not be restricted to employee-employer cases.  *Gentry* dealt with statutory rights.
Plaintiffs here invoke their statutory rights to be free from usury.  The trial court did not
even evaluate whether a class action waiver is unenforceable under *Gentry*.

I would reverse the order striking the class action allegations.  The trial court may
determine in further proceedings whether plaintiffs have claims and can determine the
appropriateness of the class action claim on a motion to certify the class.


MOSK, J.

---

[2]     The trial court asserts that plaintiffs misstated the amount in *Franco*.  The court in
that case said, "even if Franco's overtime claim is included in the analysis—raising his
total potential recovery to $26,500—the class arbitration waiver would fare no better."
(*Franco v. Athens Disposal Co., Inc., supra,* 171 Cal.App.4th at p. 1295.)